IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID E. BROWN,<br><br>        Plaintiff,<br><br>vs.<br><br>SOUTHERN UTAH UNIVERSITY, et al.,<br><br>        Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:08-CV-542-TC |

*Pro Se* Plaintiff David Brown is a Vietnam War veteran and former student at Southern Utah University (SUU). During Spring Semester 2006, Mr. Brown failed to attend his classes, and SUU listed his absence as an unauthorized withdrawal. Then, based on its policy and Mr. Brown's growing record of unfinished credits, SUU denied him the right to obtain further federal financial aid. Mr. Brown claims that his absence from class stemmed from his Post Traumatic Stress Disorder (PTSD) and that SUU, by denying further financial aid, discriminated against him based on that disability, in violation of the Rehabilitation Act of 1973 ("Rehab Act") and the American With Disabilities Act of 1990 (ADA).[1] He further contends that SUU violated his civil rights under the Free Exercise Clause of the First Amendment.

---

[1] Mr. Brown also alleges in conclusory fashion that SUU discriminated against him on the basis of his age and "veteran status." (See Verified Compl. (Docket No. 3) Count I.) But the record does not contain any other pleading asserting or supporting such claims. Accordingly, the court finds that Mr. Brown has failed to state a claim for which relief can be granted and hereby dismisses those claims.

Defendants[2] have filed a Motion for Summary Judgment on all of Mr. Brown's claims. They contend that Mr. Brown cannot prevail because he has not presented evidence sufficient to rebut SUU's showing (1) that he is not disabled within the meaning of the Rehab Act and the ADA, (2) that he cannot show his proposed accommodation was reasonable and necessary, and (3) that SUU did not burden his exercise of religion.

Mr. Brown argues that summary judgment is inappropriate at this stage because (1) the Veterans' Administration has already determined he is disabled; (2) the Department of Education has determined that SUU discriminated against him in violation of the ADA and the Rehab Act; (3) the Defendants have not met their initial burden because they have not presented a statement of facts to which they contend no genuine issue exists;[3] and (4) the evidence he has (but has not yet presented to the court) must be presented to a jury.

For the reasons set forth below, the court finds that Mr. Brown has not met his burden to establish a disability under the Rehab Act or the ADA and has not presented any evidence to support his First Amendment claim. Accordingly, the court grants Defendants' Motion for Summary Judgment.[4]

---

[2]Mr. Brown names SUU as a defendant, but also names SUU President Steven D. Bennion, "Southern Utah Board of Trustees John or Jane Does et al.," "Financial Aid Director John or Jane Doe," and "Registrar John or Jane Doe" as defendants. (See Verified Compl.) His complaint does not state whether he is suing the other named defendants in their individual or official capacities. The court need not clarify this ambiguity because Mr. Brown fails to create a genuine issue of material fact that would support a *prima facie* case of discrimination or civil rights violation.

[3]This is incorrect.

[4]The court has determined that a hearing will not materially assist it in deciding the issues. Accordingly, the court makes its decision based on the briefs and other relevant documentation.

**FACTUAL BACKGROUND**[5]

Mr. Brown, a Vietnam War veteran, began attending Southern Utah University (SUU) in the fall semester 2004. SUU is a four-year public university located in Cedar City, Utah. During the period of Mr. Brown's studies at SUU, he received Federal financial aid in the form of Pell Grants and Stafford Loans. Mr. Brown participates in the Veterans Administration's Vocational Rehabilitation and Employment Program ("VetSuccess Program), which is available to veterans who have service-related disabilities. See, e.g., 38 U.S.C. § 3101(1) (defining "employment handicap"); 38 U.S.C. § 3102 (defining basic entitlement to vocational training and rehabilitation as person who is "a veteran who has a service-connected disability rated at 20 percent or more which was incurred or aggravated in service on or after September 16, 1940); 38 C.F.R. § 21.35(a) (2009) (defining "employment handicap"); http://www.vba.va.gov/bln/vre (describing VetSuccess Program).

As a general matter, SUU (following federal financial regulations)[6] prohibits a student from receiving further Federal financial aid once the student has attempted 183 credit hours

---

[5]The facts are undisputed, in part because Mr. Brown does not specifically dispute any of SUU's forty statements of fact. "All material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record meeting the requirements of Fed. R. Civ. P. 56." DUCivR 56-1(c) (emphasis added).

[6]See 34 C.F.R. § 668.16(e)(2)(ii) (2009) ("Standards of administrative capability"). This regulation requires any educational institution participating in the Title IV, Higher Education Act of 1965 program, to determine student eligibility for financial assistance and to establish, publish, and apply "reasonable standards for measuring whether an otherwise eligible student is maintaining satisfactory progress in his or her educational program. The Secretary considers an institution's standards to be reasonable if the standards . . . [include a] . . . quantitative component that consists of a maximum timeframe in which a student must complete his or her education program."

without obtaining a degree.

During spring semester 2006, Mr. Brown was registered for nine credit hours but stopped attending his classes in late February 2006. He did not tell SUU that he was withdrawing from his classes, and, as a result, he received "UW" ("unauthorized withdrawal") grade designations for his spring semester 2006 classes. Course work receiving a UW counts as attempted credit for financial aid purposes. With the UW designations, Mr. Brown exceeded the 183 attempted credit hours limit and was denied further financial aid.

Mr. Brown alleges that he was unable to attend classes during spring semester 2006 because he was disabled by Post Traumatic Stress Disorder (PTSD). In particular, he claims that PTSD prevented him from continuing his course work and that for a period of several weeks, he was unable to get out of bed before noon. But Mr. Brown indicates that he was otherwise physically able to attend class during this period.

Mr. Brown did not tell anyone at SUU that his absence from class was due to PTSD until after Spring Semester 2006. He made no effort to officially withdraw from his spring semester classes. If he had notified SUU of his intent to withdraw from classes before March 3, 2006, he would have avoided the negative financial aid consequences of receiving the UW grades (i.e., the nine credit hours for which he registered would not have been counted toward the 183 credit hour cap on financial aid).

Mr. Brown alleges that SUU should have waived the 183 credit hour limit as a reasonable accommodation for his alleged disability because PTSD prevented him from attending classes for a period of time. Yet he testified that in late February 2006, he was "willing to go back" to school after a "rest and cooling off period" if certain conditions were met. (Brown Dep. at 85.)

4

Specifically, Mr. Brown wanted two general education course requirements to be waived—Information Literacy and Computer Applications and Internet—and he wanted a D+ grade in Communication Research raised because he felt he had earned a higher grade (this was the grade dispute with a SUU professor that occurred about the time Mr. Brown was absent from his classes).

<u>Mr. Brown's Alleged Disability</u>

Mr. Brown claims he is disabled because he suffers from Post Traumatic Stress Disorder (PTSD). But according to the medical records Mr. Brown provided, he has never been definitively diagnosed with PTSD.

In May 2003, a clinical psychologist evaluated Mr. Brown. The psychologist noted that Mr. Brown claimed "he was part of a unit involved in clandestine operations during the Vietnam War and that his records fail to support his stressors." (Progress Notes (attached as Ex. F to Defs.' Mem. Supp. Mot. Summ. J.).) The psychologist concluded, after a series of tests, that although the testing data "are . . . consistent with a diagnosis of PTSD, . . . there are no supporting documents to satisfy [diagnostic] criterion A for PTSD." (<u>Id.</u>) "Criterion A" is exposure to traumatic stress. (<u>See</u> http://www.ptsd.va.gov/professional/pages/dsm-iv-tr-ptsd.asp (listing DSM-IV-TR criteria for diagnosis of PTSD).) The psychologist further stated that the "data, brief interview and review of notes would suggest possible bipolar affective disorder." (Ex. F.)

In May 2004, Mr. Brown responded positively to a four-question PTSD screen. (Registered Nurse Progress Notes (attached as Ex. G to Defs.' Mem. Supp.).) This was, however, a self-report of symptoms rather than a diagnosis. (<u>See</u> <u>id.</u>)

In May 2008, Mr. Brown's wife referred him for a mental health consultation. The evaluating psychologist stated in her notes that "[a]t this time, it appears unlikely that [Mr. Brown] would meet criteria for PTSD diagnosis. During the interview, it became apparent that Mrs. Brown's concerns about PTSD symptoms were more related to concerns about family discord." (Consultation Notes (attached as Ex. H to Defs.' Mem. Supp.) at unnumbered p. 3.) In the DSM-IV Diagnosis section of the psychologist's notes, she stated "history of depression and possible PTSD." (Id. at unnumbered p. 6.)

The above-cited documentation constitutes all the medical evidence in the record. Mr. Brown, in his opposition memorandum, contends that he has expert witness testimony to offer from Dr. Glenn Johnson and Dr. Michael Stults, but he does not provide any of that evidence (nor has he, apparently, provided it to the Defendants) or discuss the nature of that evidence.[7]

Mr. Brown indicates that he gets angry and depressed when exposed to "long duration stressors" . . . which cause him to "want to disenfranchise [him]self from society." (David Brown Dep. at 38-39, 41 (attached as Ex. D to Defs.' Mem. Supp.).) He also testified that the day-to-day impact of his impairment is minimal. (Id. at 36.) He attributes this minimal impact to depression medication he has taken since the early 1990s.

Since November 2004, Mr. Brown recollects only two occasions where he "actually just

---

[7]In response to an interrogatory about medical evidence of his disability, Mr. Brown stated, "An extensive 10 inch file of Plaintiffs [sic] medical records, diagnosis, operations regarding Plaintiffs [sic] health in this matter are located at the VA Hospital[.]" (Pls.'s Answer to Defs.' First Set of Interrogs. (Ex. B to Defs.' Reply) (responding to Interrog. No. 5(*l*) (Ex. A to Defs.' Reply)).) Defendants obtained the entire VA file, but it did not contain any information from Dr. Johnson or Dr. Stults, and Plaintiff did not provide any such evidence during discovery. (See Defs.' Reply Mem. at 2-3.)

lost it" due to his alleged disability. (Id. at 48-49.) The first incident occurred in early 2006 (about the time Mr. Brown dropped out of his spring semester classes). During this episode, Mr. Brown was unable to resolve a grade dispute with a professor at SUU and claims that as a result he was too depressed and angry to continue his schooling for the 2006 spring semester. The second incident occurred in 2008 when Plaintiff argued with his 17-year-old son and ended up in a minor pushing match. During this incident, Mr. Brown was intensely angry for approximately two minutes. Aside from these two incidents, there were signs of general "family discord" during early 2008 involving Mr. Brown's irritability, "short fuse," and depression. (See Ex. H to Defs.' Reply Mem.)

During his time at SUU, Mr. Brown received respectable grades, with the exception of failing marks in two general education courses. The failing grades in those courses were the apparent result of Mr. Brown's lack of interest in the courses, namely, his opinion that they were "ridiculous" and a "waste of time." (Brown Dep. at 85-86.)

Other than the accommodation at issue in this case, Mr. Brown has never requested an accommodation from an employer or educational institution on the basis of PTSD.

In 2007, Mr. Brown submitted a discrimination complaint to the United States Department of Education regarding SUU's alleged failure to accommodate his disability. The Department of Education investigated his claims, but Mr. Brown did not provide or give the Department access to any medical evidence of his alleged disability. It appears that the Department of Education assumed he was disabled under the ADA and Rehab Act because Mr. Brown was a veteran receiving benefits from the VA. (See Mar. 14, 2008 Letter from U.S. Dep't of Educ. Region VIII to David Browne ("Dep't of Educ. Letter") (attached as Ex. A to Verified

7

Compl.)[8] (stating, "According to you, due to your Post Traumatic Stress Disorder, you were unable to attend classes for a significant period during spring semester."); id. (noting that Dep't of Educ. reviewed information obtained from SUU and Mr. Brown); Brown Dep. at 128 (noting that Dep't of Educ. investigator never requested medical information or documents from Mr. Brown) id. ("They went directly to the VA and to . . . the VA representative here at SUU. And all she wanted to know was that I was . . . disabled and on voc[ational] rehab. The medical issue wasn't an issue, it was how the SUU handled themselves in addressing my complaint.").) After its investigation, the Department of Education issued a letter to Mr. Brown in which it concluded that SUU violated Section 504 of the Rehab Act and Title II of the ADA by failing "to make reasonable modifications to its policies, procedures, and practices" (i.e., failing to make a reasonable accommodation for Mr. Brown's purported disability). (Dep't of Educ. Letter at 4.)

On July 17, 2008, Mr. Brown filed his complaint in court.

## ANALYSIS

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1085 (10th Cir. 2008).

The court must construe all facts and reasonable inferences therefrom in the light most

---

[8]Mr. Brown did not attach the entire Department of Education Letter to his complaint. Some of the pages are missing. But the Defendants do not dispute its authenticity, so the court relies on the exhibit as evidence for the purpose of deciding the motion for summary judgment.

favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Seegmiller v. LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008). But summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence upon which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

If the party seeking summary judgment carries its initial burden,

> the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998) (emphasis added) (internal quotation marks and citations omitted).

Mr. Brown's *pro se* status does not change the standard or lessen his burden. Although courts must construe *pro se* pleadings liberally, the fact that Mr. Brown is proceeding *pro se* does not excuse his obligation to comply with the requirements of federal procedural law. Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003); Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994). And the court may not be the *pro se* litigant's advocate. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Because "unsupported conclusory allegations . . . do not create a genuine issue of fact,"

L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000), Mr. Brown may not rely on his complaint to overcome a motion for summary judgment. The purpose of summary judgment is to determine whether an issue should be heard by a jury. Mr. Brown assumes that the issues should go to a jury, but before that can happen, he must satisfy the burden necessary to proceed to a jury trial.[9]

**Disability Discrimination Claim**

### Definition of Disability

The provisions upon which Mr. Brown relies under the ADA and the Rehab Act substantially overlap in their requirements.

To establish a prima facie case for violation of the Rehab Act § 504,[10] Mr. Brown must present evidence that (1) he is disabled under the Act; (2) he is "otherwise qualified" to receive Federal financial assistance to attend classes at SUU; (3) SUU receives federal financial assistance; and (4) SUU discriminated against Mr. Brown on the basis of his disability. See, e.g., Miller v. Board of Educ., 565 F.3d 1232, 1246 (10th Cir. 2009); Hollonbeck v. U.S. Olympic Comm., 513 F.3d 1191, 1194 (10th Cir. 2008).

---

[9] Moreover, it appears that Mr. Brown has waived his right to a jury trial. (See Verified Compl. at 1 ("Jury Trial Demanded" crossed out and initialed with "DB"); Civil Cover Sheet (Docket No. 3-2) (in signed civil cover sheet section titled "Jury Demand," the "No" box is checked).)

[10] Section 504 provides that, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

To establish a prima facie case under Title II of the ADA,[11] Mr. Brown must present similar evidence. Specifically, he must show that (1) he is a qualified individual with a disability, (2) he was either excluded from participation in or denied the benefit of a public entity's services, programs or activities (or was otherwise discriminated against by the public entity), and (3) such exclusion, denial of benefits, or discrimination was because of his disability. Miller, 565 F.3d at 1246; Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir. 1999).

Plaintiff has not demonstrated that he is "disabled" under the ADA or Rehab Act.

The threshold issue is whether Mr. Brown is "disabled" as defined under the ADA and the Rehab Act (which adopts the ADA's definition of individual with a disability.). See 29 U.S.C. § 705(20)(A)-(B). Under both acts, an individual is considered disabled if he has "a physical or mental impairment that substantially limits one or more of the major life activities[;] . . . [has] a record of such an impairment; or . . . [is] regarded as having such an impairment." 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B).

Mr. Brown contends that he has a mental impairment (PTSD); he does not contend that he was discriminated against based on any record of such impairment or that he was regarded as having such an impairment. He further contends that because he is a participant in the VA's VetSuccess program, he is disabled as a matter of law for purposes of the ADA and Rehab Act. He also points to the Department of Education letter he submitted with his complaint. Based on those two facts, he argues that the issue of whether he is disabled is already settled as a matter of

---

[11]Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

11

fact and law. Mr. Brown is incorrect.

The VetSuccess Program eligibility requirements for a disabled veteran are different than the ADA and Rehab Act definition of "disabled." See, e.g., Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1208-09 (S.D. Cal. 2002) ((holding that plaintiff's status as disabled veteran did not compel court to find disability under ADA); Howell v. Sam's Club No. 8160/Wal-Mart, 959 F. Supp. 260, 267-68 (E.D. Penn.) (same), aff'd, 141 F.3d 1153 (3d Cir. 1997) (table); Wimbley v. Bolger, 642 F. Supp. 481, 485 (W.D. Tenn. 1986) (plaintiff's status as disabled veteran with "30 per cent service connected disability by Veteran Administration standards . . . did not automatically render him" disabled under the Rehab Act); 29 C.F.R. Pt. 1630, App. § 1630.2(k) (2009) ("The fact that an individual has a record of being a disabled veteran . . . does not guarantee that the individual will satisfy the definition of 'disability' under [the ADA]."); see also Miller v. Board of Educ. of Albuquerque Pub. Sch., 565 F.3d 1231, 1246 (10th Cir. 2009) (holding that plaintiff did not adequately establish discrimination element under ADA or Rehab Act even though administrative appeal officer found violation of Individuals with Disabilities Education Act). Mr. Brown's status as a disabled veteran is not sufficient to qualify him as "disabled" under the ADA or Rehab Act.

The Department of Education investigation report contains no analysis of whether Mr. Brown is disabled, but rather, assumed he was disabled based on Mr. Brown's receipt of VA benefits and his representation that he has PTSD. Moreover, even if the Department of Education had made such a finding, it would not be binding, for the reasons articulated above.

Mr. Brown has the burden to establish, through medical evidence, that he has PTSD. E.g., Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 657 (D.D.C. 1997) ("A person

12

alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability[.]"). PTSD can be a qualifying impairment under the two acts. Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114 (10th Cir. 2004); Felix v. NYC Transit Auth., 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001). But he has not met that burden; his medical records do not reveal a medical diagnosis of PTSD. The medical evidence contains self-reported symptoms and vague assertions about what Mr. Brown might have – but there is no definitive diagnosis of PTSD in any of the VA papers. And Mr. Brown does not provide anything other evidence.

Because Mr. Brown has not provided evidence that he has an impairment that would qualify as a disability, the court holds that Defendants are entitled to summary judgment on the ADA and Rehab Act claims.[12]

**First Amendment Claim**

Plaintiff alleges in his complaint that the Defendants' actions violated his rights under the Free Exercise Clause of the First Amendment.[13] (See Verified Compl. at unnumbered p. 5.) To survive a motion for summary judgment on his claim of violation of the Free Exercise Clause, Mr. Brown must present some evidence that "the challenged action created a burden on the exercise of [his] religion." Bauchman v. West High Sch., 132 F.3d 542, 557 (10th Cir. 1997).

---

[12]The court need not reach the other issues raised by the Defendants.

[13]Mr. Brown also claims, without alleging relevant facts or presenting any evidence, that Defendants discriminated against him "because of his age . . . and veteran status." (Verified Compl. at unnumbered p. 5.) Nothing in the record could possibly support a claim of discrimination on the basis of age or veteran status (assuming veteran status is a protected class). Accordingly, the court finds that to the extent Mr. Brown has attempted to establish such causes of action, the claims fail on the merits and are hereby dismissed for failure to state a claim upon which relief can be granted.

His complaint contained only a bare bones, conclusory claim. And he does not allege any facts or present evidence in his opposition brief concerning religion, the practice of religion, or how any action of any defendant burdened his practice of religion. Accordingly, the Defendants are entitled to summary judgment on Plaintiff's Free Exercise claim.

## **ORDER**

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Docket No. 58) is GRANTED and all of Plaintiff David E. Brown's claims are hereby DISMISSED. The Clerk of Court is directed to enter judgment in favor of the Defendants and close the case.

SO ORDERED this 6th day of April, 2010.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge